VENABLE LLP
Sarah S. Brooks (SBN 266292)
ssbrooks@venable.com
2049 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Andrew J. Kutas (*Pro Hac Vice*)
akutas@venable.com
1290 Avenue of the Americas, 20th Floor
New York, New York 10104
Telephone: (212) 218-2100
Facsimile: (212) 218-2200

*Attorneys for Plaintiff Canon Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| CANON INC., a Japanese corporation, | Case No. 2:21-CV-02074-JVS-PVC |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF CANON'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION** |
| MITOCOLOR INC., a California corporation | |
| Defendant. | Date:        September 13, 2021<br>Time:        10:00 a.m.<br>Courtroom:  10C<br>Judge:       Hon. James V. Selna |
| | **JURY TRIAL DEMANDED** |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................1

II.   Background .........................................................................................................2

      A.    Canon's Patented Technology ..................................................................2

      B.    Mitocolor and Its Infringing Activities ...................................................3

      C.    Mitocolor's Default .................................................................................4

III.  Argument ............................................................................................................4

      A.    The Court Should Enter Default Judgment Against Mitocolor ...........4

            1.    The Court Has the Requisite Jurisdiction ....................................5

            2.    The *Eitel* Factors Warrant Default Judgment ............................6

      B.    As Relief, to the Court Should Enter a Permanent Injunction ...........10

            1.    Canon Has Suffered and Will Continue to Suffer
                  Irreparable Harm in the Absence of a Permanent
                  Injunction ....................................................................................11

            2.    Monetary Damages Are an Inadequate Form of
                  Compensation ..............................................................................15

            3.    The Balance of Hardships Weighs in Canon's Favor ..............16

            4.    The Public Interest Favors the Grant of a Permanent
                  Injunction ....................................................................................17

IV.   Conclusion ........................................................................................................18

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
544 F.3d 1341 (Fed. Cir. 2008) ................................................................. 13

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
768 F. Supp. 2d 1049 (C.D. Cal. 2011) ...................................................... 7

*Apnea Scis. Corp. v. Koncept Innovators, Inc.*,
No. SA CV 16-1265-DOC, 2016 WL 9086937 (C.D. Cal. Nov. 7, 2016) ........ 12

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) ....................................................... 11, 12, 18

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996) .................................................................. 13

*Bot M8 LLC v. Sony Corp. of Am.*,
No. 2020-2218, — F.4th —, 2021 WL 2932690 (Fed. Cir. July 13, 2021) ........ 8

*Canon Inc. v. Color Imaging, Inc.*,
292 F. Supp. 3d 1339 (N.D. Ga. 2018) ...................................................... 14

*Canon Inc. v. GCC Int'l Ltd.*,
263 Fed. App'x 57 (Fed. Cir. 2008) ........................................................... 15

*Deckers Outdoor Corp. v. Alphabetdeal.com, Inc.*,
No. 2:18-cv-01198-AB, 2018 WL 6133705 (C.D. Cal. Aug. 1, 2018) ........ 9, 10

*DMF, Inc. v. Amp Plus, Inc.*,
No. 2:18-cv-07090-CAS-GJSx, 2019 WL 1099982
(C.D. Cal. Mar. 7, 2019) .......................................................................... 12

*Douglass Dynamics LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ................................................................. 11

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ................................................................................. 10

*Edwards Lifesciences AG v. CoreValve, Inc.*,
699 F.3d 1305 (Fed. Cir. 2012) ........................................................... 10, 17

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) .................................................................... 6

*ePlus, Inc. v. Lawson Software, Inc.*,
No. 3:09-cv-620, 2011 WL 2119410 (E.D. Va. May 23, 2011) ............... 15, 17

*Finisar Corp. v. Gigalight (USA) Corp.*,
No. 18-cv-01077-RS, 2018 WL 8264089 (N.D. Cal. Nov. 15, 2018) ............... 7

ii

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Fitness Anywhere LLC v. Woss Enters. LLC*,
No. 14-cv-01725-BLF, 2018 WL 6069511 (N.D. Cal. Nov. 20, 2018)............ 12

*Ford Global Techs., LLC v. New World Int'l, Inc.*,
No. 3:17-CV-3201-N, 2019 WL 1531759 (N.D. Tex. Apr. 9, 2019),
*aff'd mem.*, 810 Fed. App'x 909 (Fed. Cir. 2020) ............................... 13

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) .............................................................. 5

*Genband US LLC v. Metaswitch Networks Corp.*,
861 F.3d 1378 (Fed. Cir. 2017) ..................................................... 11, 12

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
466 U.S. 408 (1984) ......................................................................... 5

*Hybritech Inc. v. Abbott Labs.*,
849 F.2d 1446 (Fed. Cir. 1988) ........................................................ 11

*i4i L.P. v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ..................................................... 11, 17

*i4i L.P. v. Microsoft Corp.*,
670 F. Supp. 2d 568 (E.D. Tex. 2009) ............................................ 11

*Inventio AG v. Otis Elevator Co.*,
No. 1:06-cv-5377, 2011 WL 3480946 (S.D.N.Y. Aug. 4, 2011)........................ 14

*Levi Strauss & Co. v. Toyo Enter. Co.*,
665 F. Supp. 2d 1084 (N.D. Cal. 2009) ............................................ 9

*Maglula, Ltd. v. Hangzhou Goodtools Co.*,
No. 2:18-cv-00842-GMN-VCF, 2019 WL 5058589
(D. Nev. June 13, 2019),
*report and recommendation adopted*, 2019 WL 4979710
(D. Nev. Oct. 7, 2019) ..................................................................... 13

*MercExchange L.L.C. v. eBay, Inc.*,
500 F. Supp. 2d 556 (E.D. Va. 2007)................................................ 15

*Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*,
788 F. Supp. 2d 71 (E.D.N.Y. 2011)................................................. 15

*NobelBiz Inc. v. Global Connect, L.L.C.*,
No. 6:12-cv-244, 2016 WL 11598608 (E.D. Tex. Oct. 27, 2016) ................... 12

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
52 F.3d 267 (9th Cir. 1995)............................................................... 6

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998)......................................................... 5, 6

*PepsiCo, Inc. v. Cal. Sec. Cans*,
238 F. Supp. 2d 1172 (C.D. Cal. Dec. 27, 2002) ......................... 7, 9, 10

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

iii

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
219 F.R.D. 494 (C.D. Cal. 2003) ........................................................ 9

*Pilot Inc. v. Coolman Outdoor Corp.*,
No. ED CV18-02286 JAK, 2019 WL 2620723 (C.D. Cal. Apr. 10, 2019) ..... 8, 9

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012) ............................................. 10, 11, 13

*Robert Bosch LLC v. Juijiang Yada Traffic Equip. Co.*,
No. 2:10-CV-1926 JCM LRL, 2011 WL 1322534 (D. Nev. Apr. 4, 2011) ...... 15

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ........................................................ 11

*Rutherford v. Hellas, Inc.*,
No. EDCV 17-01411 JGB (KKx), 2018 WL 6131184
(C.D. Cal. Mar. 19, 2018) ................................................................. 6

*Sream, Inc. v. Walsh*,
No. EDCV 16-2538-JGB(KKx), 2017 WL 8230031
(C.D. Cal. Feb. 14, 2017) ................................................................. 6

*Tech. Licensing Co. v. Noah Co.*,
No. C-11-3498 EMC, 2012 WL 3860758 (N.D. Cal. Sept. 5, 2012) ............. 7, 8

*TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*,
920 F.3d 777 (Fed. Cir. 2019) .......................................................... 17

*Telequip Corp. v. Change Exch.*,
No. 5:01-cv-1748, 2006 WL 2385425 (N.D.N.Y. Aug. 15, 2006) ................... 18

*TeleVideo Sys. v. Heidenthal*,
826 F.2d 915 (9th Cir. 1987) ..................................................... 5, 6, 9

*In re Tuli*,
172 F.3d 707 (9th Cir. 1999) ............................................................. 5

**Rules and Statutes**

28 U.S.C. § 1331 ............................................................................ 5

28 U.S.C. § 1338(a) ........................................................................ 5

28 U.S.C. § 1400(b) ........................................................................ 6

35 U.S.C. § 283 ....................................................................... 1, 10

Cal. Civ. Proc. Code § 410.10 ............................................................ 5

Cal. Corp. Code § 1702 .................................................................... 6

Cal. Corp. Code § 1702(a) ................................................................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

MEMORANDUM IN SUPPORT OF MOTION FOR
DEFAULT JUDGMENT AND PERMANENT INJUNCTION

**Other Authorities**

Fed. R. Civ. P. 4(e)(1) ................................................................................................. 6

Fed. R. Civ. P. 4(h)(1) ................................................................................................. 6

Fed. R. Civ. P. 8(b)(6) ................................................................................................. 5

Fed. R. Civ. P. 12(a)(1)(A)(i) ...................................................................................... 4

Fed. R. Civ. P. 55(a) .................................................................................................... 4

Fed. R. Civ. P. 55(b)(2) ........................................................................................... 1, 4

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

MEMORANDUM IN SUPPORT OF MOTION FOR
DEFAULT JUDGMENT AND PERMANENT INJUNCTION

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

## I. Introduction

Plaintiff Canon Inc. ("Canon") filed the present patent infringement lawsuit against Defendant MITOCOLOR INC. ("Mitocolor") on March 8, 2021, seeking a permanent injunction, among other relief. (*See* Dkt. No. 1). Despite having been properly served, Mitocolor has failed to respond to Canon's complaint. Accordingly, on May 28, 2021, the Clerk entered default against Mitocolor. (*See* Dkt. No. 16). Canon now seeks entry of default judgment and issuance of a permanent injunction against Mitocolor pursuant to Federal Rule of Civil Procedure 55(b)(2) and 35 U.S.C. § 283.

The patents at issue in this lawsuit—U.S. Patent Nos. 8,565,649 (the "'649 patent"); 9,354,551 (the "'551 patent"); 9,753,402 (the "'402 patent"); 10,209,667 (the "'667 patent"); 10,289,060 (the "'060 patent"); 10,289,061 (the "'061 patent"); 10,295,957 (the "'957 patent"); 10,488,814 (the "'814 patent"); 10,496,032 (the "'032 patent"); 10,496,033 (the "'033 patent"); 10,514,654 (the "'654 patent"); 10,520,881 (the "'881 patent"); and 10,520,882 (the "'882 patent") (collectively, the "Asserted Patents"[1])—describe and claim, among other things, a new and improved design of a toner supply container for use in a copy machine. Mitocolor has infringed the Asserted Patents by making, using, importing, selling, and/or offering to sell toner supply containers that incorporate Canon's patented inventions and are sold as substitutes for Canon toner supply containers. Mitocolor's infringement has forced Canon to compete directly against the unauthorized use of Canon's own patented technology, causing Canon to suffer irreparable harm in the marketplace that cannot be remedied by monetary damages. Canon, therefore, seeks entry of default judgment and issuance of a permanent injunction against Mitocolor. Canon is not seeking monetary damages.

---

[1] As set forth in Canon's March 29, 2021 Notice of Pendency of Other Actions or Proceedings (Dkt. No. 10), these patents also are the subject of various other proceedings, in the International Trade Commission and in this and other district courts.

1

## II.    Background

### A.    Canon's Patented Technology

The Asserted Patents issued to Canon between October 22, 2013 and December 31, 2019. (Dkt. No. 1 ¶¶ 9-22). The Asserted Patents belong to two patent families—one including the '649, '551, and '402 patents, and the other including the '667, '060, '061, '957, '814, '032, '033, '654, '881, and '882 patents—and the patents within each family disclose the same subject matter (*i.e.*, their specifications are the same) while claiming different aspects of the inventions disclosed therein. As noted above, the Asserted Patents describe and claim, among other things, a new and improved design of a toner supply container (often referred to in the Asserted Patents as a "developer supply container"). The patented toner supply container is for use in an electrophotographic image forming apparatus such as a copy machine. (*See* Domon ¶ 11).[2]

The inventions described and claimed in the Asserted Patents are important to Canon and are embodied in many different models of Canon toner supply containers. (Domon ¶ 12; Dkt. No. 1 ¶ 24). Canon has designed numerous of its copy machines to utilize these patented toner supply containers. (Domon ¶ 12). Currently, there are at least 12 different Canon toner supply container models that utilize the inventions of the Asserted Patents. (Domon ¶ 12). Canon has made significant investments in the research, development, and marketing of these toner supply containers and their compatible copy machines. (Domon ¶ 13). The next several years will be an important time in the life of the Asserted Patents, as Canon attempts to recoup its substantial investments. (Domon ¶ 13).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

---

[2] "Domon ¶ __" refers to the numbered paragraphs of the accompanying Declaration of Akira Domon in Support of Canon's Motion for Default Judgment and Permanent Injunction. "Domon Ex. A" refers to Exhibit A to that declaration.

2

**B.    Mitocolor and Its Infringing Activities**

Mitocolor is a California corporation with a place of business in Rowland Heights, California. (Dkt. No. 1 ¶ 4; Kutas ¶ 3, Ex. A[3]). Mitocolor conducts activities via the internet at least through its "TopInk" storefront on *Amazon.com*. (Dkt. No. 1 ¶ 5; Kutas ¶ 6, Ex. C).

Mitocolor has infringed the Asserted Patents by making, using, importing, selling, and/or offering to sell at least the following toner supply containers ("Accused Products") for use in various copy machines as substitutes for the Canon toner supply containers listed in the table below.

| Mitocolor Product Designation | Corresponding Canon Toner Supply Container |
|---|---|
| 08-08.9-ITCANON3325K1 | GPR-53 (Black) |
| 08-08.9-ITCANON3325C1 | GPR-53 (Cyan) |
| 08-08.9-ITCANON3325M1 | GPR-53 (Magenta) |
| 08-08.9-ITCANON3325Y1 | GPR-53 (Yellow) |

(Dkt. No. 1 ¶¶ 24-26; Domon ¶ 16).

In the industry, Canon is sometimes referred to as an "original equipment manufacturer," or "OEM" for short, because it manufactures the copy machines in which its toner supply containers are used, and the Accused Products are sometimes referred to as "non-OEM" toner supply containers because they are manufactured by someone other than the OEM. (Domon ¶ 17). Because manufacturers of non-OEM toner supply containers do not invest nearly as much in research and development as the OEM does, non-OEM toner supply containers have been known to be of lower quality than OEM toner supply containers, resulting in poorer performance and sometimes causing problems with the copy machine that require repair or more frequent maintenance. (Domon ¶ 17).

---

[3] "Kutas ¶ __" refers to the numbered paragraphs of the accompanying Declaration of Andrew Kutas in Support of Canon's Motion for Default Judgment and Permanent Injunction. "Kutas Ex. __" refers to the exhibits to that declaration.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

### C.    Mitocolor's Default

Despite having been properly served, Mitocolor never responded to Canon's complaint or otherwise entered an appearance in this case. With the Court's authorization following an *ex parte* application, a summons and copy of the complaint were served on Mitocolor via the California Secretary of State on April 13, 2021. (*See* Dkt. Nos. 12-14). Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i) and Cal. Corp. Code § 1702(a), Mitocolor's responsive pleading was due on May 14, 2021, but Mitocolor failed to file an answer or otherwise respond to the complaint. On May 27, 2021, Canon filed a request for entry of default against Mitocolor. (*See* Dkt. No. 15). The Clerk of Court entered default against Mitocolor on May 28, 2021. (*See* Dkt. No. 16). On June 1, 2021, Canon filed a Rule 26(f) report proposing a July 30, 2021 deadline for filing a motion for default judgment. (*See* Dkt. No. 17). On July 2, 2021, the Court issued a scheduling notice adopting the July 30 deadline. (*See* Dkt. No. 18).

Additionally, after effecting alternative service on Mitocolor, Canon became aware that Mitocolor had designated a new agent for service of process. (Kutas ¶¶ 4-5). To ensure that Mitocolor had notice of this action, its status of default, and the due date for Canon's motion for default judgment, on June 15, 2021, Canon had courtesy copies of documents including the summons and complaint, the alternative service papers, the Clerk of Court's entry of default, and Canon's Rule 26(f) report served on Mitocolor's newly designated agent for service of process. (Kutas ¶ 5, Ex. B). Canon is also serving courtesy copies of this motion and related papers on the new agent for service of process.

## III.    Argument

### A.    The Court Should Enter Default Judgment Against Mitocolor

Now that Canon has secured the Clerk's entry of default under Federal Rule of Civil Procedure 55(a) by demonstrating that Mitocolor is in default, Canon may move the Court for entry of default judgment. *See* Fed. R. Civ. P. 55(b)(2). (*See*

*also* Dkt. No. 16). By virtue of its default, Mitocolor is deemed to have conceded all well-pleaded allegations of liability in Canon's complaint. *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Because Canon has demonstrated that jurisdiction and service are proper, and because default judgment is proper in light of the merits and fairness, the Court should grant Canon's motion.

## 1.     The Court Has the Requisite Jurisdiction

The Court must have subject matter jurisdiction over the case and personal jurisdiction over Mitocolor before it can render a valid default judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35 of the United States Code. (Dkt. No. 1 ¶ 6). This Court has general personal jurisdiction over Mitocolor pursuant to Cal. Civ. Proc. Code § 410.10 because Mitocolor has a principal place of business in Rowland Heights, California. (Dkt. No. 1 ¶¶ 4, 7; Kutas Ex. A). *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)) (observing that general jurisdiction exists when a defendant is domiciled in the forum state). And, although personal jurisdiction is independently founded on either general jurisdiction or specific jurisdiction, this Court also has specific personal jurisdiction over Mitocolor because Mitocolor has, directly or through intermediaries, committed acts within California giving rise to this action and/or has established minimum contacts with California such that the exercise of jurisdiction would not offend traditional notions of fair play and justice. (Dkt.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

No. 1 ¶ 7). *See Panavision*, 141 F.3d at 1320 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).

Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Mitocolor is organized in, and thus resides in, the State of California and this judicial district. (Dkt. No. 1 ¶ 8). Finally, service of process was proper because a private process server personally served the summons and complaint on a person employed in the Secretary of State's office in the capacity of assistant or deputy under Cal. Corp. Code § 1702. (*See* Dkt. Nos. 13, 14). *See also* Fed. R. Civ. P. 4(h)(1), (e)(1).

Accordingly, the Court has both subject matter jurisdiction and personal jurisdiction, and both venue and service of process are proper.

**2.      The *Eitel* Factors Warrant Default Judgment**

Once jurisdiction and adequacy of service are satisfied, the Court considers the following factors to determine whether it should grant a default judgment:

(1)    the possibility of prejudice to the plaintiff,

(2)    the merits of plaintiff's substantive claim,

(3)    the sufficiency of the complaint,

(4)    the sum of money at stake in the action,

(5)    the possibility of a dispute concerning material facts,

(6)    whether the default was due to excusable neglect, and

(7)    the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, the complaint's factual allegations are taken as true, except as they relate to damages. *Rutherford v. Hellas, Inc.*, No. EDCV 17-01411 JGB (KKx), 2018 WL 6131184, at *4 (C.D. Cal. Mar. 19, 2018) (citing *TeleVideo*, 826 F.2d at 917); *Sream, Inc. v. Walsh*, No. EDCV 16-2538-JGB(KKx), 2017 WL 8230031, at *4 (C.D. Cal. Feb. 14, 2017) (same). These factors all favor default judgment here.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

*Factor 1*. The first *Eitel* factor asks whether there is a possibility of prejudice to the plaintiff. As explained below in Section III.B, Canon would not be able to prevent Mitocolor from continuing infringement absent an injunction, leaving Canon without a remedy. This factor therefore favors default judgment. *See Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176-77 (C.D. Cal. Dec. 27, 2002); *Finisar Corp. v. Gigalight (USA) Corp.*, No. 18-cv-01077-RS, 2018 WL 8264089, at *2 (N.D. Cal. Nov. 15, 2018); *Tech. Licensing Co. v. Noah Co.*, No. C-11-3498 EMC, 2012 WL 3860758, at *3 (N.D. Cal. Sept. 5, 2012).

*Factors 2 and 3*. The second and third *Eitel* factors consider the substantive merits of the claims and the sufficiency of the pleadings. Taking the allegations as admitted, Canon's complaint sufficiently states a claim for Mitocolor's infringement of the Asserted Patents, thus favoring default judgment. *See Tech. Licensing*, 2012 WL 3860758, at *3 ("These factors basically require that a plaintiff state a claim on which the plaintiff may recover.") (internal quotation marks and alterations omitted). Indeed, Canon's complaint alleges that:

- Canon is the sole owner of the entire right, title, and interest in and to the Asserted Patents (Dkt. No. 1 ¶ 22); and

- Mitocolor is engaged in the business of manufacturing, importing, selling, offering to sell, and/or using toner supply containers, including toner supply containers bearing the designations 08-08.9-ITCANON3325K1, 08-08.9-ITCANON3325C1, 08-08.9-ITCANON3325M1, and 08-08.9-ITCANON3325Y1, that are covered by and thus infringe one or more claims of the Asserted Patents (Dkt. No. 1 ¶¶ 25-26, 28-30, 36-38, 44-46, 52-54, 60-62, 68-70, 76-78, 84-86, 92-94, 100-102, 108-110, 116-118, 124-126; Dkt. No. 1-1).

These allegations sufficiently establish a claim for patent infringement. *See Tech. Licensing*, 2012 WL 3860758, at *3 ("To state a claim of patent infringement, a

7

plaintiff must allege at the very least ownership of the allegedly infringed patent and infringement of the patent by the defendant, *e.g.*, by selling the allegedly infringing product."). Canon's allegations far surpass the minimum standards, including through the use of detailed claim charts that map the elements of an asserted independent claim of each Asserted Patent to an accused 08-08.9-ITCANON3325K1 toner supply container.[4] (Dkt. No. 1-4 Ex. 8; Dkt. No. 1-5 Ex. 9; Dkt. No. 1-6 Ex. 10; Dkt. No. 1-7 Ex. 11; Dkt. No. 1-8 Exs. 12-14; Dkt. No. 1-9 Exs. 15-21). *See Bot M8 LLC v. Sony Corp. of Am.*, No. 2020-2218, — F.4th —, 2021 WL 2932690, at *6 (Fed. Cir. July 13, 2021) ("A plaintiff is not required to plead infringement on an element-by-element basis. Instead, it is enough that a complaint place the alleged infringer on notice of what activity is being accused of infringement.") (citations, internal quotation marks, and alterations omitted). Therefore, the second and third *Eitel* factors favor default judgment.

Factor 4. The fourth *Eitel* factor concerns the sum of money at stake in the action. Because Canon requests only injunctive relief to prevent further infringement by Mitocolor, and is not seeking monetary damages, this factor favors default judgment. *Pilot Inc. v. Coolman Outdoor Corp.*, No. ED CV18-02286 JAK (SPx), 2019 WL 2620723, at *3 (C.D. Cal. Apr. 10, 2019).

Factor 5. The fifth *Eitel* factor considers the possibility of a dispute concerning material facts. Because Mitocolor has not participated in this case, "there is little to suggest that there is a possibility of a dispute concerning material facts." *Tech. Licensing*, 2012 WL 3860758, at *3. Still, Canon has more than sufficiently alleged the facts of Mitocolor's infringement and Canon's harm (in its complaint and herein), supported by detailed exhibits and declarations, such that Mitocolor would not likely be able to present facts raising any dispute as to

---

[4] Canon's complaint also identifies the specific independent and dependent claims of each of the Asserted Patents that the Accused Products infringe. (Dkt. No. 1 ¶¶ 28, 36, 44, 52, 60, 68, 76, 84, 92, 100, 108, 116, 124).

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

Canon's allegations. *See Pilot*, 2019 WL 2620723, at *3 (granting default judgment and stating that Defendant's failure to appear and defend precluded the possibility of disputing material facts); *see also PepsiCo*, 238 F. Supp. 2d at 1177 (finding no genuine dispute of material facts because the well-pleaded facts in the complaint are taken as true under *TeleVideo*). This factor therefore favors default judgment.

Factor 6. "When default judgment is the result of failure to appear after properly being summoned, there is no excusable neglect." *Deckers Outdoor Corp. v. Alphabetdeal.com, Inc.*, No. 2:18-cv-01198-AB (PJWx), 2018 WL 6133705, at *5 (C.D. Cal. Aug. 1, 2018). Not only did Canon effect alternative service on Mitocolor via the California Secretary of State, but as soon as Canon became aware of Mitocolor's new designated agent for service of process, Registered Agents Inc., Canon promptly had courtesy copies of the documents including the summons and complaint, the alternative service papers, the Clerk's entry of default, and Canon's Rule 26(f) report served on the new agent. (Dkt. No. 14; Kutas ¶¶ 4-5, Ex. B). Despite this, Mitocolor never answered or otherwise responded to Canon's complaint, or contacted Canon to request an extension of the deadline. Thus, Mitocolor has "had ample time to appear and respond in this matter," and "[t]here is no evidence to support a finding that [its] failure to defend or otherwise appear in this matter was the result of excusable neglect." *Levi Strauss & Co. v. Toyo Enter. Co.*, 665 F. Supp. 2d 1084, 1097 (N.D. Cal. 2009). This factor therefore weighs in favor of a default judgment.

Factor 7. "[W]here a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted." *Levi Strauss*, 665 F. Supp. 2d at 1098 (internal quotation marks omitted) (finding this factor to favor default judgment because the defendants failed to appear or respond); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("Moreover, Defendant's failure to answer Plaintiff's Complaint

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

9

makes a decision on the merits impractical, if not impossible.") (citing *PepsiCo*, 238 F. Supp. 2d at 1177). Because Mitocolor has failed to appear or respond here, the general policy of favoring decisions on the merits does not preclude the entry of default judgment, and this factor favors default judgment. *See Deckers*, 2018 WL 6133705, at *5.

### B.    As Relief, to the Court Should Enter a Permanent Injunction

Canon's complaint prays for relief in the form of, *inter alia*, a permanent injunction. (Dkt. No. 1 p. 27). The Court may "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain a permanent injunction in this patent infringement action, Canon must demonstrate the following four factors:

- that it has suffered an irreparable injury;
- that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
- that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
- that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "This analysis proceeds with an eye to the 'long tradition of equity practice' granting 'injunctive relief upon a finding of infringement in the vast majority of patent cases.'" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012) (quoting *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring)). Indeed, because "[a] patentee's right to exclude is a fundamental tenet of patent law … [a]bsent adverse equitable considerations, the winner of a judgment of validity and infringement may normally expect to regain the exclusivity that was lost with the infringement." *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1305, 1314 (Fed. Cir. 2012); *see also Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1153 (Fed. Cir. 2011) ("While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either.").

Here, all four permanent injunction factors weigh heavily in favor of granting a permanent injunction against Mitocolor.

### 1.   Canon Has Suffered and Will Continue to Suffer Irreparable Harm in the Absence of a Permanent Injunction

The first permanent injunction factor strongly favors a permanent injunction, as Canon has suffered and will continue to suffer irreparable harm absent a permanent injunction prohibiting Mitocolor's infringement. Irreparable harm is an injury of the type that is not fully compensable by an award of monetary damages. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988). Types of irreparable harm include, for example, lost sales, loss goodwill, and damage to reputation. *See Douglass Dynamics LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344-45 (Fed. Cir. 2013). When there is direct marketplace competition between the patentee and the alleged infringer, as there is here between Canon and Mitocolor, such competition "weighs heavily in favor of a finding of irreparable injury." *i4i L.P. v. Microsoft Corp.*, 670 F. Supp. 2d 568, 599 (E.D. Tex. 2009), *aff'd in part and modified in part*, 598 F.3d 831 (Fed. Cir. 2010); *see also Presidio*, 702 F.3d at 1363 ("Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude.").

The patentee must show that a "causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639, 641 (Fed. Cir. 2015). This does not require showing that the patented feature be the exclusive reason for consumer demand, but simply some connection between them. *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1383 (Fed.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Cir. 2017). Stated differently, a causal nexus requires that "a patented feature is one of several features that cause consumers to make their purchasing decisions." *Id.*; *see Apple*, 809 F.3d at 639 ("This just means that there must be proof that the infringement causes the harm."). "[W]hen the infringing product contains no feature relevant to consumers' purchasing decisions other than what the patent claims, … causal nexus and consumer demand may be apparent from the simple fact of infringing sales." *Genband*, 861 F.3d at 1384 n.2. Indeed, this Court has found that for claims that read on the entirety of an accused product, the causal nexus inquiry is satisfied. *Apnea Scis. Corp. v. Koncept Innovators, Inc.*, No. SA CV 16-1265-DOC (KESx), 2016 WL 9086937, at *6 (C.D. Cal. Nov. 7, 2016) (finding causal nexus where demand for the device was fairly described as demand for the patent, which encompassed nearly the entire device); *see also Fitness Anywhere LLC v. Woss Enters. LLC*, No. 14-cv-01725-BLF, 2018 WL 6069511, at *11 (N.D. Cal. Nov. 20, 2018). Other factors supporting a causal nexus are where the accused products are interchangeable with the patentee's products and the infringer has targeted the patentee's customers. *DMF, Inc. v. Amp Plus, Inc.*, No. 2:18-cv-07090-CAS-GJSx, 2019 WL 1099982, at *14 (C.D. Cal. Mar. 7, 2019); *see NobelBiz Inc. v. Global Connect, L.L.C.*, No. 6:12-cv-244, 2016 WL 11598608, at *28 (E.D. Tex. Oct. 27, 2016) (rejecting a defendant's arguments against causal nexus because its system was "extremely similar" to the patentee's product).

Mitocolor's infringement has caused and will continue to cause Canon to lose sales that Canon likely would have made. As noted above, Mitocolor's Accused Products are sold as substitutes for OEM toner supply containers made by Canon. (Domon ¶¶ 16-17). The customers that purchase Mitocolor's Accused Products are customers that could have instead bought the OEM toner supply containers. (Domon ¶ 18). Once a customer purchases or uses a non-OEM toner supply container, such as one of Mitocolor's Accused Products, that customer is

likely to continue to purchase or use non-OEM toner supply containers. (Domon ¶ 19). Moreover, the purchase or use of non-OEM toner supply containers for one type of copy machine is likely to lead to the purchase or use of non-OEM toner supply containers for other types of copy machines. (Domon ¶ 19). This loss of customers and sales opportunities is irreparable harm. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62 (Fed. Cir. 2008) (citing *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996)).

Mitocolor's infringement also has caused a loss of goodwill and injury to Canon's reputation. Because non-OEM toner supply containers such as Mitocolor's Accused Products have been known to be of lower quality than the genuine OEM toner supply containers, users who encounter Mitocolor's Accused Products might face the risk of encountering poorer performance and increased maintenance problems than if they had used Canon's genuine toner supply containers. (Domon ¶ 20). This could lead to distrust of the reliability of Canon's copy machines, causing additional irreparable harm. (Domon ¶ 20). *See Ford Global Techs., LLC v. New World Int'l, Inc.*, No. 3:17-CV-3201-N, 2019 WL 1531759, at *3 (N.D. Tex. Apr. 9, 2019) ("Ford had demonstrated that New World's aftermarket products are of inferior quality and that Ford's reputation is harmed when customers attribute the low quality of New World's products to Ford."), *aff'd mem.*, 810 Fed. App'x 909 (Fed. Cir. 2020); *Maglula, Ltd. v. Hangzhou Goodtools Co.*, No. 2:18-cv-00842-GMN-VCF, 2019 WL 5058589, at *4-*5 (D. Nev. June 13, 2019), *report and recommendation adopted*, 2019 WL 4979710 (D. Nev. Oct. 7, 2019).

By depriving Canon of the marketplace exclusivity accorded by the Asserted Patents and forcing Canon to compete against the unauthorized use of its own patented technology, Mitocolor's infringement has caused Canon to suffer irreparable harm, which would continue in the absence of a permanent injunction. *See Presidio*, 702 F.3d at 1363 (finding that the district court abused its discretion

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

13

in finding no irreparable injury and denying a permanent injunction where the patent and infringer were direct competitors and the patentee was unwilling to license the patent-in-suit). Canon does not license others to make toner supply containers for Canon copy machines (Domon ¶ 25), but the denial of a permanent injunction against Mitocolor would essentially result in a compulsory license to do just that, which "is fundamentally at odds with the right of exclusion built into our patent system." *Inventio AG v. Otis Elevator Co.*, No. 1:06-cv-5377, 2011 WL 3480946, at *2 (S.D.N.Y. Aug. 4, 2011) (granting a permanent injunction where, in the absence of such a ruling, the patentee would be forced to bid against its own technology, be deprived of the right to exclude others from the marketplace, and lose the ability to control the terms of any patent license); *see Canon Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1339, 1350 (N.D. Ga. 2018) (granting a permanent injunction where Canon had licensed the asserted patent but "expressly prohibited [the licensee] from selling toner bottles for Canon copiers").

Finally, the irreparable harm caused by Mitocolor's infringement is sufficiently tied to Canon's Asserted Patents. The asserted claims of those patents read on the entirety of the Accused Products. (*See* Domon ¶ 21). The patents each claim a "toner supply container" or "developer supply container" (which refers to a type of toner supply container), and the Accused Products are toner supply containers that contain the features of claims of the Asserted Patents. (Dkt. No. 1 ¶¶ 25-26, 28-30, 36-38, 44-46, 52-54, 60-62, 68-70, 76-78, 84-86, 92-94, 100-102, 108-110, 116-118, 124-126; Dkt. No. 1-1; Domon ¶ 21). The incorporation of the patented features into the Accused Products is a significant reason why consumers of toner supply containers purchase those products. (Domon ¶ 21). Consumers purchase the Accused Products because the use of Canon's patented technology confers significant advantages to those products. (Domon ¶ 21; Dkt. No. 1 ¶ 24). Canon makes its own toner supply containers for use in the same copy machines, such that the Accused Products are interchangeable with Canon's products.

14

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

(Domon ¶¶ 12, 17-18; Dkt. No. 1 ¶ 24). Moreover, Mitocolor promotes the interchangeability of its Accused Products with Canon's products and the use of the Accused Products with compatible Canon copy machines, such that Mitocolor targets Canon's customers. (Domon ¶ 16, Ex. A). Accordingly, there is a causal nexus tying Mitocolor's infringement to Canon's harm.

### 2. Monetary Damages Are an Inadequate Form of Compensation

The second factor also strongly supports granting an injunction. "Whether a patentee has an adequate remedy at law 'invariably overlaps' with whether a patentee has suffered irreparable harm." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 2119410, at *13 (E.D. Va. May 23, 2011) (quoting *MercExchange L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va. 2007)). Therefore, many of the same factors supporting a finding of irreparable harm can be used to support a finding that monetary remedies are inadequate. *See Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 788 F. Supp. 2d 71, 74, 76 (E.D.N.Y. 2011).

Here, monetary damages are an inadequate form of compensation because, as discussed above, Canon has suffered and will continue to suffer a loss of customers and sales opportunities, goodwill, and injury to its reputation. It would be exceedingly difficult, if not impossible, to convert Canon's unquantifiable harm into an estimate of monetary damages. (Domon ¶ 20, 22). Moreover, Mitocolor has gone to great lengths to conceal itself, including filing false statements with the Secretary of State as to its business address, which necessitated Canon's resort to alternative service. (*See* Dkt. No. 12 at 4-5). In light of Mitocolor's failure to appear, this would make recovering a monetary judgment from Mitocolor highly impractical and unlikely, if not impossible, which favors a permanent injunction. *See Robert Bosch LLC v. Juijiang Yada Traffic Equip. Co.*, No. 2:10-CV-1926 JCM LRL, 2011 WL 1322534, at *4 (D. Nev. Apr. 4, 2011) (citing *Canon Inc. v.*

15

*GCC Int'l Ltd.*, 263 Fed. App'x 57, 62 (Fed. Cir. 2008)). Accordingly, damages would not adequately compensate Canon for the harms that it has suffered and will continue to suffer as a result of Mitocolor's infringement.

### 3.    The Balance of Hardships Weighs in Canon's Favor

The third factor to be considered is the relative hardship to the parties. Here, the balance of hardships tips decidedly in Canon's favor.

Canon would face substantial hardship without a permanent injunction. Canon has invested significant time and resources to research, develop, and market the inventions of the Asserted Patents. (Domon ¶¶ 3-10, 13, 23). A denial of relief, thereby allowing Mitocolor to continue to sell infringing toner supply containers, would hinder Canon's ability to recoup its investment. (Domon ¶ 23). Moreover, the market for replacement toner supply containers is a tempting and lucrative one, especially for those looking to take advantage of the efforts and expenditures of OEMs like Canon. (Domon ¶ 24). If Mitocolor's infringement goes unchecked, other would-be infringers will be encouraged to enter the market, and demand for genuine OEM toner supply containers will decline further. (Domon ¶ 24). Further, to date, Canon has secured consent judgments and permanent injunctions in cases involving most or all of the Asserted Patents from ten alleged infringers. *See Canon Inc. v. Kuhlmann Enters.*, D. Ariz. No. 2:21-cv-00387, Dkt. No. 15; *Canon Inc. v. Sun Data Supply Inc.*, C.D. Cal. No. 2:21-cv-02075, Dkt. No. 21; *Canon Inc. v. Digital Marketing Corp.*, C.D. Cal. No. 2:21-cv-02094, Dkt. No. 17; *Canon Inc. v. NAR Cartridges*, N.D. Cal. No. 5:21-cv-01646, Dkt. No. 17; *Canon Inc. v. Do It Wiser, Inc.*, D. Del. No. 1:21-cv-00347, Dkt. No. 10; *Canon Inc. v. Katun Corp.*, D. Minn. No. 0:21-cv-00655, Dkt. No. 18; *Canon Inc. v. Ink Tech. Printer Supplies, LLC*, S.D. Ohio No. 3:21-cv-00088, Dkt. No. 8; *Canon Inc. v. Copier Repair Specialists, Inc.*, E.D. Tex. No. 4:21-cv-00186, Dkt. No. 12; *Canon Inc. v. Zinyaw LLC*, S.D. Tex. No. 4:21-cv-00745, Dkt. No. 18. Denying Canon permanent injunctive relief in this case could have an adverse effect on Canon's

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

ability to convince other alleged infringers in future cases to agree to similar amicable resolutions. (Domon ¶ 25).

While the harm to Canon is clear and significant, any hardship experienced by Mitocolor as a result of a permanent injunction will be slight. *See TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019). Mitocolor appears to sell thousands of products on *Amazon.com*. (Kutas ¶ 7, Ex. D.) Neither Mitocolor's survival nor its well-being is likely to turn on whether it can continue to sell the Accused Products at issue here. *See ePlus*, 2011 WL 2119410, at *16 (finding that defendant's survival would not be at risk if permanently enjoined from selling infringing products, in part because it has "many different product offerings unrelated to its infringing [product]"). Indeed, Mitocolor's decision not to appear and defend itself in this litigation speaks volumes about how little is at stake from its own perspective.

### 4. The Public Interest Favors the Grant of a Permanent Injunction

The "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863. A permanent injunction that enforces a valid patent furthers public policy inherent in the patent laws, which are designed to encourage useful inventions by rewarding the inventors with a limited period of market exclusivity. *See Edwards Lifesciences*, 699 F.3d at 1314 ("The innovation incentive of the patent is grounded on the market exclusivity whereby the inventor profits from his invention."); *ePlus*, 2011 WL 2119410, at *17 ("The Federal Circuit has long acknowledged the importance of the patent system in encouraging innovation."). Thus, courts give "considerable weight to the strong public interest in favoring entry of injunctive relief to protect … patent rights." *ePlus*, 2011 WL 2119410, at *17. Moreover, "the public interest nearly always weighs in favor of protecting

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple*, 809 F.3d at 647.

Here, a permanent injunction prohibiting Mitocolor from selling the Accused Products will not harm any public interest, much less a critical one. There will be no shortage of toner supply containers, as Canon is ready and able to meet the demand for toner supply containers by Mitocolor's customers. (Domon ¶ 26). Accordingly, the issuance of a permanent injunction in this case serves the public interest by encouraging innovators like Canon "to engage in the toils of scientific and technological research." *Telequip Corp. v. Change Exch.*, No. 5:01-cv-1748, 2006 WL 2385425, at *2 (N.D.N.Y. Aug. 15, 2006). And because the Canon toner supply containers that the Accused Products are designed to replace are themselves covered by the Asserted Patents (Domon ¶¶ 12, 16, 21), the public interest factor is especially strong. *Apple*, 809 F.3d at 647.

## IV.    Conclusion

For the foregoing reasons, Canon's motion for entry of default judgment and issuance of a permanent injunction against Mitocolor should be granted.

Dated: July 30, 2021            VENABLE LLP

                                /s/   Sarah S. Brooks
                                Sarah S. Brooks
                                Andrew J. Kutas (*Pro Hac Vice*)

                                *Attorneys for Plaintiff Canon Inc.*

MEMORANDUM IN SUPPORT OF MOTION FOR
DEFAULT JUDGMENT AND PERMANENT INJUNCTION